```
            IN THE UNITED STATES DISTRICT COURT
         FOR THE EASTERN DISTRICT OF PENNSYLVANIA

ADELBERTO SULIT                  :    CIVIL ACTION
                                 :
              v.                 :
                                 :
FEDERAL RESERVE BANK             :
     OF PHILADELPHIA             :    NO. 08-2081
```

MEMORANDUM

McLaughlin, J.                                     August 28, 2009

      The plaintiff, Adelberto Sulit, a Filipino, brings this case against his former employer, the Federal Reserve Bank of Philadelphia (the Bank), alleging that the defendant terminated his employment due to the plaintiff's race or national origin. The plaintiff's complaint contains a single count under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq.

      The defendant has moved for summary judgment on the plaintiff's discrimination claim, arguing that the basis for the plaintiff's termination was an incident in which the plaintiff pointed his firearm at another employee. The Court will grant the defendant's motion for summary judgment.

I.   The Summary Judgment Record

      The plaintiff was employed as a security guard at the Bank, one of twelve regional Reserve Banks comprising the Federal Reserve System, from June of 2005 until July of 2007. The plaintiff claims that his termination was the result of racial

and national origin. He is Filipino and was born in the Philippines. Deposition of Plaintiff (Pl. Dep.), Pl.'s Ex. A at 121:21-22.

The defendant claims that the plaintiff was terminated following an investigation into an incident during which the plaintiff reportedly pointed his firearm at a fellow guard. The plaintiff claims that this incident did not actually occur and that the defendant uses the fabrication of that incident as pretext for an illegally motivated firing. This portion of the Court's opinion will recite the facts contained in the summary judgment record.

A.   The Plaintiff's Employment History with the Defendant

The plaintiff was first hired by the defendant to work in the mail room of the treasury department in April of 2001. The defendant later engaged him as a protection officer in the law enforcement unit in the summer of 2005. Pl.'s Dep. at 17-18.

As a protection officer, the plaintiff was responsible for safeguarding the premises and the people working in the Bank. Id. at 116:2-5. He received three months of training and graduated from the Federal Law Enforcement Academy prior to assuming his duties. Id. at 116-17. Training at the Academy included instruction in weapon safety and firing. Id. at 117. During his firearms training, the plaintiff was told to stop what

he was doing when a range instructor believed that the plaintiff had fired his weapon by mistake.  Id. at 118:23-24-119:1-5.

Before May 31, 2007, the plaintiff had no personal problems or conflicts with his fellow officers or his supervisors during the course of his employment at the Bank.  Id. at 78-79.  There is no evidence that any person in his workplace ever made any derogatory remarks about his race or national origin during his employment.  See id. at 170-72.  None of the plaintiff's previous supervisors reported having had to discipline him prior to May 2007.  See Deposition of Sergeant Jacqueline Smith (Smith Dep.), Pl.'s Ex. C at 21:18-22:3; Deposition of Sergeant Reuben Bolden (Bolden Dep.), Pl.'s Ex. R at 10:5-10.  His immediate supervisor in May 2007, Lieutenant Harry Fletcher, describes the plaintiff's work record as "acceptable."  Deposition of Lieutenant Harry Fletcher (Fletcher Dep.), Pl.'s Ex. D at 26:10-11.

    B.    The Reporting of the Incident of May 31, 2007, to the Defendant's Decision Makers

On July 5, 2007, Sergeant Jacqueline Smith overheard two other officers, Officer Ronald Daltwas and Officer Michael Judge, discussing the plaintiff at a lunch table.  When questioned by Sergeant Smith, Officer Daltwas told her that both he and Officer Joseph Gilchrist had observed the plaintiff point his gun at Officer Judge while in the locker room several weeks

earlier.  Id. at 11:13-15.  Sergeant Smith later spoke with Officer Gilchrist about the incident, and Officer Gilchrist confirmed the statements of Officers Daltwas and Judge.  Id. at 12.

Upon instruction from Lieutenant Fletcher, Sergeant Smith provided a written statement concerning her conversations with Officers Daltwas, Gilchrist and Judge.  Id. at 17:21-23. The statement reads:

> I was informed today of an incident that occurred on May 31, 2007, at approximately 11 p.m. involving Officer Sulit.  Officer Mike Judge joked with him in the locker room to turn down his blaring music and he [Sulit] told Officer Judge that a person could get shot for telling another person to lower their music.  He proceeded to point his personal weapon (holstered) at Mike's body.  Officer Judge's back was turned and he did not see it.  He was told the next day by Officers Gilchrist and Daltwas.  Officer Judge confronted Officer Sulit about this and Officer Sulit said he was just kidding.

Pl.'s Ex. E.

Statements signed by Officers Gilchrist and Daltwas repeat the substance of Sergeant Smith's statement.  Officer Gilchrist wrote that "Sulit said he would shoot somebody if they told him to turn down his radio" and that "he rose up his arm and pointed something toward Officer Judge and Officer Daltwas.  It appeared to be a holstered weapon."  Pl.'s Ex. F.  When questioned why he delayed in reporting the incident, Officer Gilchrist explained that he believed that the plaintiff was a "loose cannon" and that he had been afraid to do so.  Deposition

of Officer Gilchrist (Gilchrist Dep.), Pl.'s Ex. G at 21:8-15. Officer Daltwas wrote that he "saw Ofc. Sulit pointing his off-duty pistol sideways at Ofc. Judge." Pl.'s Ex. H. Officer Daltwas explained that he delayed reporting the incident because he considered the plaintiff to be a friend and did not want to cause him any trouble. Deposition of Officer Daltwas (Daltwas Dep.), Pl.'s Ex. I at 23:18-20. Neither man was disciplined for his delay in reporting the incident. Gilchrist Dep. at 24; Daltwas Dep. at 35.

Officer Judge also provided a signed statement regarding the incident. According to that statement, the plaintiff entered the locker room playing a loud radio, which he asked be turned down. The plaintiff responded "you know a person could get shot for telling another person to turn their radio down." Pl.'s Ex. J. He was later told by Officers Daltwas and Gilchrist that the plaintiff had pointed a weapon at him. Officer Judge wrote that he confronted the plaintiff about the incident and that the plaintiff told him that he was "only kidding." Id.

Lieutenant Fletcher wrote a memorandum to his supervisor, Captain McGrail, concerning Sergeant Smith's report and the witnesses' written statements. His memorandum states that Officer Judge told the plaintiff to lower the volume of his

radio and that the plaintiff "pulled his personal weapon from its holster and pointed it at Officer Judge."  Pl.'s Ex. K.

    C.    The Defendant's Investigation of the Incident and Termination of the Plaintiff

Upon receipt of the written statements, Captain McGrail, along with Mary Ann Hood (the defendant's Senior Vice President of Human Resources) and Kimberly Taylor (the defendant's Employee Relations Manager) conducted an investigation of the incident.  Deposition of Captain McGrail (McGrail Dep.), Pl.'s Ex. L at 30.  Captain McGrail and Ms. Hood interviewed the plaintiff on July 9, 2007.  During that interview, the plaintiff denied having pointed his weapon at Officer Judge.  Def.'s Ex. M.  The plaintiff continues to deny that he pointed his weapon at Officer Judge and disputes Officers Daltwas, Gilchrist and Judge's accounts of the incident.  Opp'n 11-12.

Kimberly Taylor conducted interviews of Officers Daltwas, Gilchrist and Judge on July 10, 2007, concerning the incident.  Pl.'s Ex. O.  She also met with Captain McGrail and Ms. Hood to discuss their interview of the plaintiff.  Deposition of Kimberly Taylor (Taylor Dep.), Pl.'s Ex. N at 13.  Ms. Taylor prepared a report on the incident in which she wrote that the three witnesses, in their interviews, had confirmed the substance of their written reports and that she found their reports to be

credible. Ms. Taylor's report also states that Captain McGrail and Ms. Hood found the plaintiff's account of the incident not to be credible. Based upon this belief, "[i]t was determined that Officer Adelberto Sulit violated basic safety and weapons handling procedures and rules of conduct when he pointed his personal weapon at the back of another Protection Officer, Michael Judge." Pl.'s Ex. O.

Captain McGrail decided to terminate the plaintiff and drafted a recommendation for termination of employment dated July 12, 2007. His decision was based upon his determination that plaintiff's account of the incident was not credible. It also took into account previous counseling that the plaintiff had received in August 2005, when he had improperly pointed his weapon downrange during a training exercise while another officer was sweeping the floor. The recommendation states that the plaintiff violated safety and weapons handling procedures and that the plaintiff's "actions warrant[ed] termination of employment." It is signed by Captain McGrail, Mary Ann Hood and Kimberly Taylor. Pl.'s Ex. P.

D.  The Progressive Disciplinary Policy and the Plaintiff's Comparator

The defendant had a "progressive disciplinary policy" in effect at the time the plaintiff was terminated. This policy allowed for discipline short of termination for certain

infractions of policy or rules.  The defendant did not apply the progressive disciplinary policy to the plaintiff's case and proceeded directly to termination.  Ms. Taylor explained that the reason for termination, instead of some form of discipline short of termination, was that the plaintiff had committed a "major violation of bank policy" and that the policy allows for termination in such a case.  Deposition of Kimberly Taylor, Pl.'s Ex. N at 39:23-40:24.  Although Captain McGrail does not recall ever discharging a protection officer without utilizing the defendant's progressive disciplinary policy, he can recall four incidents in which progressive discipline was employed.  Those four incidents involved the accidental discharge of pepper spray, two incidents of absenteeism, and an incident involving a guard sleeping on the job.  Pl.'s Ex. L at 63-66.

    The plaintiff points to the accidental discharge of pepper spray as an incident involving a similarly situated employee of the defendant who was of a different race and national origin than the plaintiff and who received better treatment than the plaintiff under similar circumstances calling for discipline.  The officer disciplined in that incident, Officer Augusta Lindsay, is an African-American woman, and she was suspended for three days by the defendant as a result.  Pl.'s Ex. S.  A report drafted on November 20, 2006, by Captain McGrail describes how Officer Lindsay accidentally discharged her mace

and then vacated the area and failed to notify her supervisors. Officer Lindsay then allowed a different officer to take the blame for that incident. The report concludes that "[d]ue to your error in judgment, you put all the employees in the affected area in a state of physical discomfort and failed to follow proper Division procedures. At this time, we are placing you on 3 day suspension without pay." Id.

II. Analysis

The plaintiff brings a single claim for a violation of Title VII of the Civil Rights Act of 1964. The analysis of this claim is controlled by the Supreme Court's decision in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973).[1] The plaintiff must first establish a prima facie case of discrimination. A plaintiff can establish a prima facie case of race discrimination by demonstrating that: 1) he is a member of a protected class; 2) he was subject to an adverse employment action; and 3) similarly situated members of other racial classes were treated more favorably or that other circumstances exist that give rise

---

[1] The plaintiff argues that this case should be analyzed under a "mixed motive" standard, which would not employ the McDonnel Douglas burden shifting analysis. This argument is discussed below. The Court holds that the McDonnel Douglas analysis is properly applied to the defendant's motion for summary judgment and that, even under a "mixed motive" analysis, the plaintiff fails to provide sufficient evidence to survive the defendant's motion for summary judgment.

to an inference of unlawful discrimination.  Jones v. School Dist. of Phila., 198 F.3d 403, 410-12 (3d Cir. 1999).[2]

If the plaintiff can establish a prima facie case, then the burden shifts to the defendant to articulate a legitimate, nondiscriminatory reason for the challenged employment action.  If the defendant can do so, then the burden shifts back to the plaintiff to show that the defendant's articulated reason is actually a pretext for discrimination.  Id. at 410.  To defeat summary judgment, the plaintiff must "point to some evidence, direct or circumstantial, from which a factfinder could reasonably either 1) disbelieve the employer's articulated legitimate reasons; or 2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action."  Fuentes v. Perskie, 32 F.3d 759, 764 (3d Cir. 1994).  Fuentes "places a difficult burden on the plaintiff."  Kautz v. Met-Pro Corp., 412 F.3d 463, 467 (3d Cir. 2005).

The defendant concedes that the plaintiff has met the first two elements of his prima facie case:  he is a member of a

---

[2]As in any motion for summary judgment, a court must view the evidence and draw reasonable inferences from that evidence in the light most favorable to the party opposing summary judgment.  See, e.g., Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986).  Summary judgment is proper if the pleadings and other evidence on the record "show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).

protected class (he is Filipino and was born in the Philippines), and he was subject to adverse action in being terminated by the defendant.  The defendant contends, however, that the plaintiff has failed to provide evidence of a similarly situated member of another racial or national class who was treated more favorably than the plaintiff, or evidence that circumstances exist that give rise to an inference of unlawful discrimination.  The Court agrees.  The Court also agrees that, even assuming the plaintiff has provided evidence of a prima facie case, he has not provided evidence that would demonstrate that the defendant's articulated reason for termination is pretextual.

    A.    <u>The Plaintiff Fails to Make Out a Prima Facie Case</u>

The sole example of a similarly situated member of a different racial or national class provided by the plaintiff is Officer Augusta Lindsay.  The plaintiff argues that he and Officer Lindsay were both "employed by Defendant as Protection Officers in Defendant's Law Enforcement Unit and they both were found guilty by Defendant of misusing their weapons."  Opp'n at 18.  As the plaintiff recognizes, to be similarly situated, individuals must have engaged in the same conduct and share in common all relevant aspects of their employment.  The conduct for comparison must be without such differentiating or mitigating circumstances that would distinguish each actor's conduct or the

employer's treatment of them for such conduct.  See Bullock v. Children's Hosp. of Phila., 71 F.Supp.2d 482, 489 (E.D. Pa. 1999).

In this case, the relevant "conduct" is, as the plaintiff states, being "found guilty" of misconduct by the defendant.  The underlying findings of guilt by the defendant with respect to the plaintiff and Officer Lindsay must be without such differentiating circumstances that would distinguish the defendant's treatment of them for such conduct.

The record contains evidence that the defendant found that Officer Lindsay accidentally discharged her pepper spray, thereby causing a "state of physical discomfort," and that she failed to take responsibility for that action.  The defendant found that the plaintiff pointed his firearm at the back of another officer.  The two actions underlying the defendant's treatment of the plaintiff and of Officer Lindsay are so different in their respective levels of danger as to be incomparable for purposes of demonstrating a prima facie case of discrimination under McDonnell Douglas.  Whereas Officer Lindsay's action was an unintentional discharge of a nonlethal weapon, the conduct attributed to the plaintiff involved the aiming of a lethal weapon directly at a fellow employee.  The hazard of death or severe bodily injury is substantial with

respect to the latter conduct and unlikely with respect to the former.

The plaintiff argues that such a finding is incorrect for two reasons.  First, the plaintiff argues that he did not actually commit the offense charged against him and that he has maintained his innocence of the underlying charge.  Opp'n at 20.  This assertion is immaterial here, however, because the fact that the plaintiff denies the underlying conduct does not make the alleged conduct comparable to that of Officer Lindsay.  This argument would be relevant to an attempt to demonstrate that the defendant's reason for termination was pretextual, but such a showing presupposes evidence of a prima facie case of discrimination.

Second, the plaintiff argues that, assuming he did commit the offense ascribed to him, he never discharged his weapon, whereas Officer Lindsay did discharge her chemical mace.  This argument ignores the gulf between the comparative misjudgment and recklessness underlying the actions of the plaintiff and Officer Lindsay.  The plaintiff was fired for intentionally pointing a lethal weapon at another person, demonstrating, at best, poor judgment and recklessness with respect to another officer's life.  Officer Lindsay's poor judgment was demonstrated by her failure to take responsibility for the accidental nonlethal discharge of a weapon.  The

plaintiff was found to have been imprudent with respect to the use of a deadly weapon; Lindsay with respect to an assumption of responsibility.  The plaintiff's argument fails to mold the two acts into conduct comparable for purposes of establishing a prima facie case of discrimination.

      B.    The Plaintiff Fails to Demonstrate Pretext

Even assuming that the plaintiff had established a prima facie case of discrimination, the Court would still grant summary judgment in favor of the defendant on the basis of its articulated legitimate basis for the plaintiff's termination. Even if the plaintiff's denial of the underlying charge could establish the plaintiff's prima facie case, the Court holds that the assertion does not overcome the defendant's offer of a legitimate basis for his firing.

The plaintiff offers no evidence from which a factfinder could reasonably either disbelieve the employer's articulated legitimate reasons for his termination or believe that discrimination was more likely than not a motivating or determinative cause of the Bank's decision to terminate his employment.  The fact that the plaintiff's denies committing the underlying conduct is irrelevant to this analysis.  It is only relevant that the three decision makers in this case, Captain McGrail, Mary Ann Hood and Kimberly Taylor, believed that he

pointed his weapon at Officer Judge.  The record contains no evidence to undermine the sincerity of that belief.  Without some basis on which to call that belief and that decision into doubt, the plaintiff cannot overcome the defendant's articulated legitimate reason for his termination.

The plaintiff also relies on the delay in reporting the incident by Officers Daltwas, Gilchrist and Judge to establish his pretext argument.  Opp'n at 23.  This delay was in no way attributable to the relevant decision makers in this case.  The plaintiff offers no evidence that Captain McGrail, Ms. Hood or Ms. Taylor delayed their investigation into the matter or spent time manufacturing a pretextual basis for the defendant's termination.

The plaintiff further asserts that evidence that discriminatory animus "influenced or participated in the decision" to terminate his employment would be enough to establish pretext.  Opp'n at 24 (citing Abramson v. William Paterson College, 260 F.3d 265, 286 (3d Cir. 2001)).  For example, the plaintiff asserts that several individuals urged him to "fight the accusations" and even that a Lieutenant Henderson told him that "Sergeant Smith made up the incident."  Id.  The plaintiff's counsel maintained at oral argument that this, along with the inconsistences in Officers Daltwas, Gilchrist and Judge's testimony, indicate that the three decision makers in

-15-

this case did not attempt to truly investigate the incident from a standpoint of credibility.

The plaintiff's assertions that the decision makers in this case relied on statements by people who harbored racial animus toward the plaintiff, however, does not establish or suggest that anyone with such animus "influenced or participated in <u>the</u> <u>decision</u>" to terminate the plaintiff. The evidence shows that Captain McGrail, Ms. Hood, and Ms. Taylor conducted a thorough investigation of the charges against the plaintiff, including an interview with the plaintiff and the opportunity for him to provide corroborating witnesses to his side of the story. <u>See</u> Pl. Ex. N.

It is not the place of the Court to "sit as a super-personnel department" over the employment decisions of a business. <u>Brewer v. Quaker State Oil Refining Corp.</u>, 72 F.3d 326, 332 (3d Cir. 1995). The evidence offered by the plaintiff demonstrates, at most, that the decision makers erred in their determination that Officers Daltwas, Gilchrist and Judge were more credible than the plaintiff. That alleged error in judgment is not the equivalent of racially discriminatory motivation or influence.

Finally, the plaintiff argues that the fact that he was not subjected to the Bank's progressive disciplinary policy is evidence of pretext. This assertion is insufficient to establish

pretext for the same reasons that the plaintiff has failed to provide evidence of similar conduct between himself and another employee.  The plaintiff does not provide any evidence that the defendant ordinarily employs progressive discipline in the case of dangerous, major violations of policy.

The plaintiff offered the testimony of Captain McGrail that, to his recollection, no employee had been subject to immediate termination without the benefit of progressive discipline.  Opp'n at 24-25.  The three instances of progressive discipline recalled by Captain McGrail included his the incident involving Officer Lindsay, an incident involving absenteeism and an incident involving sleeping on the job.  Pl.'s Ex. L at 63-66.  None of those circumstances is comparable to the charge against the plaintiff.  Each of these other applications of progressive discipline fails to provide evidence that would suggest discriminatory pretext because of the incomparability of those incidents and the accusation against the plaintiff.

   C.   The Plaintiff Cannot Succeed on a "Mixed Motive" Analysis

The plaintiff argues that the Court should apply a "mixed motive" analysis to his claims, as opposed to the McDonnell Douglas burden shifting analysis.  Opp'n at 25.  In Desert Palace, Inc. v. Costa, 539 U.S. 90 (2003), the Supreme Court noted that Congress had adopted its discussion of a "mixed

motive" theory of liability laid out in Price Waterhouse v. Hopkins, 490 U.S. 228 (1989).  Under the Civil Rights Act of 1991, a mixed-motive plaintiff may establish an unlawful employment practice by demonstrating "that race, color, religion, sex, or national origin was a motivating factor for any employment practice, even though other factors also motivated the practice." 42 U.S.C. § 2000e-2(m).

If the mixed-motive plaintiff establishes an unlawful employment practice, the employer may avail itself of a limited affirmative defense if it can "demonstrat[e] that [it] would have taken the same action in the absence of the impermissible motivating factor."  Desert Palace, 539 U.S. at 95.  A successful affirmative defense limits the plaintiff's remedies but does not absolve the defendant of liability.

Desert Palace held that direct evidence is not necessary for a plaintiff to prove that discrimination was a "motivating factor" in a defendant's decision to take adverse action against the plaintiff.  However, Desert Palace still requires proof that discrimination was a motivating factor. Where the first prong of the McDonnell-Douglas analysis demonstrates that the plaintiff has failed to provide evidence of discrimination through circumstantial evidence, and where the plaintiff provides no direct evidence of discrimination, there is no basis to allow the plaintiff to proceed on a mixed motive

-18-

theory. Such is the case here. The plaintiff has failed to provide either direct or circumstantial evidence of discrimination, and the application of a mixed motive analysis would not rescue the plaintiff from such a failure. See Rouse v. II-VI, Inc., No. 08-3922, 2009 WL 1337144 (3d Cir. May 14, 2009).

The plaintiff only cites to one case in support of his claim under a mixed motive analysis. Opp'n at 25 (citing Black v. Healthcare Servs. Group, Inc., No. 05-01689, 2007 WL 2343859 (W.D. Pa. Aug. 13, 2007)). Black stated that a plaintiff can prove age discrimination in two ways. First, he can "present direct evidence to prove discrimination under the mixed motives theory of liability developed in Price Waterhouse." Id. at *3. Second, he can perform the typical McDonnell Douglas burden shifting procedure.

Black is unpersuasive of the plaintiff's position for three reasons. First, Black was an Age Discrimination in Employment Act case, not a Title VII case. The Supreme Court has recognized that Congress abolished the dichotomy between direct and circumstantial evidence with respect to Title VII under a mixed motive analysis. Desert Palace at 101-02. The same abolition has not extended to the ADEA. See Gross v. FBL Fin. Servs., 129 S. Ct. 2343, 2351 n.4 (2009). Second, because it was an ADEA case, Black required direct evidence of discrimination, which the plaintiff has failed to provide in this case. Third,

-19-

and finally, even if the requirement of direct evidence from Black was ignored, Black still required some evidence of discrimination to survive summary judgment.  As discussed in relation to the McDonnell Douglas analysis, the plaintiff in this case has provided no such evidence.

III. Conclusion

The plaintiff has failed to provide evidence sufficient to establish either a prima facie case or pretext according to the McDonnell Douglas burden shifting analysis.  Even assuming that this case should be analyzed through the lens of a "mixed motive" analysis, the plaintiff's evidence is deficient under that analysis as well.  The Court will grant the defendant's motion for summary judgment on the plaintiff's claim of racial or national origin discrimination.

An appropriate order shall follow separately.